JOHN SPAHN, d. b. a., *vs.* ANTON WILLMAN, p. b. r.

*Master and Servant—Sunday Contract—Evidence—Motion for New Trial.*

1. In an action by a servant against his master for a breach of a contract of hiring, evidence that the servant worked elsewhere and earned money after the alleged breach of the contract and during the time of the continuance of said contract, is admissible as going to the measure of damages.

2. In said action, if the jury believe from a preponderance of the evidence that the servant was prevented from executing the contract by the wrongful act of the master, the former would be entitled to recover wages, etc., according to the terms of the contract, less any sum of money that he may have received on account of the contract and such sum as he may have earned in the time he would have given to the work if he had continued in the master's employ. But in order for the jury to so find, every element necessary to constitute the contract, as well as the discharge of the servant against his will, must be proved by a preponderance of evidence.

3. In all contracts entered into on Sunday, as the parties are *pari delicto* neither can assert rights thereunder; the policy of the law is that of absolute non-action. It leaves the parties exactly where they happen to be. The result is that the contract being executory is for all practical purposes void. Neither party can recover in an action based upon it. Therefore a specific Sunday contract cannot be ratified and there can be no action for damages for non-performance of it sustained.

4. While a contract entered into on Sunday is void, yet if one person receives the benefit of the labor of another thereunder, the law places the duty upon him to pay for it; and in an action of assumpsit under the count for work and labor, the value of such labor can be recovered.

(*Deecmber 7, 1897.*)

LORE, C. J., and SPRUANCE and BOYCE, J. J., sitting.
*Peter L. Coopcr, Jr.*, for plaintiff below.
*William F. Kurtz* for defendant below.

Superior Court, New Castle County, November Term, 1897.

ACTION of assumpsit (No. 111 to May T., 1896,) with the common counts and one special count for work and labor and one for special damages. The pleas were non-assumpsit and *reps.* and issues. There was no bill of particulars filed. The special count set forth damages by reason of the non-performance of a contract

on the part of defendant below. Willman alleged that he was hired by Spahn to take charge of his farm in Brandywine Hundred for the period commencing September 14th, 1896, and continuing until the following 25th of March, 1897, at the rate of ten dollars per month and his board, he to live in the farm house; that he went upon the said farm under the contract and worked on it and took care of it for two months at the end of which time Spahn put one Wiggins in the house to take charge of the place and the goods of Willman were moved to another part of the house; that he then left the place, considering that that was a sufficient discharge or violation of the contract. His claim was for $94.00 for wages, board and room rent covering the time between his alleged discharge and the expiration of the contract.

The appellant alleged that Willman was not the tenant of the farm, but was only hired at ten dollars per month and board to work on the farm for an indefinite period; that Wiggins moved into the house after Willman had located there with the latter's knowledge and consent, and that the contract, if. any, was made on Sunday and was therefore null and void under the law.

When the plaintiff below had rested, the counsel for the defendant below moved for a non-suit on the following grounds:

*First*, Because the servant had sued his master for the act of Wiggins, a third party, and in his testimony proved a tenancy of Wiggins, and could not therefore hold Spahn liable for what Wiggins as tenant did; if the plaintiff proved that Wiggins was Spahn's agent he was bound to prove that the agent acted within the scope of his authority, in order to bind Spahn, and this he had failed to do. Assuming that the contract was valid and that Spahn had hired Willman to the 25th day of March and was bound to pay him, still there was no discharge shown on the part of the appellant, but simply an act of the tenant, Wiggins, who went on the farm under some contract with Spahn.

*Second*, That by Willman's own testimony, the contract was made on Sunday and was therefore void.

The Court held that there was some evidence on the part of the plaintiff below that he was hired by Spahn and discharged by Spahn, and that matter as well as the agency of Wiggins was a

matter for the jury; and, furthermore, that even though it be admitted that the Sunday contract was void, there were several day's work performed by Willman for which he had not been paid. The non-suit was refused.

Counsel for the defendant below produced a witness and offered to prove by him that he had offered Willman work at a certain rate during the time of the continuance of the alleged contract with Spahn and after he had left the latter's employ.

This line of examination was abjected to by plaintiff's counsel, who contended that where there is a breach of a contract, as in the present case, the party not responsible for said breach was not obliged to look for work, but could sit down and wait until the end of the period covered by the contract and then sue for his wages. Defendant's counsel urged that even where the servant had been wrongfully discharged by the master, the actual damages is the amount which he would have received as wages if he had been permitted to complete his contract, less what he has earned in the meantime or what he might have earned by due diligence in seeking employment in the same or similar business.

*Wood on Master and Servant, Sec. 125; Polk vs. Daly, 14 Abbott's Practice Cases, 156; Hamilton vs. McPherson, 28 N. Y., 76; 14 American and English Ency. of Law, 793; 2 Sutherland on Damages, 495; Sedgwick on Damages, 93.*

LORE, C. J:—You may show what he earned and received, during the time for which he claims the defendant should pay him.

SPRUANCE, J:—It goes to the measure of damages.

### PLAINTIFF'S PRAYERS.

The plaintiff below prayed the Court to charge the jury as follows:

*First,* That if they should believe the special contract was made for the performance of labor as tenant on the farm for the period of time alleged and the plaintiff was discharged before the end of said period by reason of no default upon his part, he was entitled to recover wages, with any actual damages which he had sustained, and that the true measure of damages was the value of

his wages and his board and lodging, which were covered by the special contract, less whatever wages he made working for other people during said period.

*Second*, That if the contract was made on Sunday, and both of the parties thereafter agreed to the terms of the contract and entered into a part performance thereof, and by their subsequent acts ratified the same, then it was a valid contract.

*Williamson vs. Brendenburg*, (*Appellate Court of Indiana*) *32 North Eastern, 1022; Russell vs. Mortgage, 44 North Western, 237; McKinnis vs. Estis, 46 North Western, 987.*

*Third*, That if the jury should find the contract void, they nevertheless could return a verdict in favor of the plaintiff below, under the count for work and labor, for the work actually done.

### DEFENDANT'S PRAYERS.

The defendant below prayed the Court as follows:

*First*, That if the jury believed the evidence in the case, they must find for the defendant below, as the law arising from the evidence was in his favor.

*Second*, That there was no agency and no discharge upon the part of the defendant below.

(The Court refused to charge as requested in either of the above prayers, saying that there was evidence on both sides and it was not for the Court to indicate to the jury on which side they thought there was a preponderance of the evidence.)

*Third*, That if the jury believed that the contract was made on Sunday, no action for a breach of it could be maintained.

*Fourth*, That if the plaintiff had failed to prove positively his readiness and willingness during the whole time after the alleged wrongful discharge to return to the defendant's employ, he could not recover on the special contract.

*Fifth*, That if the jury believe from the evidence that the contract was made as an entirety, then the plaintiff could not recover either on the special contract or on the common counts unless the whole contract was performed, such performance being a condition precedent to his claim to anything.

CHARGE OF COURT.

*Sixth,* That if the jury believe that there was simply an indefinite hiring at so much wages per month, then either party could put an end to the contract at any time without notice.

(The Court refused to entertain the above prayer, as it involved the nature of the contract for hiring, which was a matter for the jury to determine.)

*Seventh,* That if the jury should believe that the plaintiff had a good cause for quitting the service of the defendant and did not avail himself of it at the time but continued to work thereafter, he had by his conduct, waived his right to recover and could not afterwards rely upon it.

LORE, C. J., charging the jury;

Gentlemen of the jury:—This is an action of assumpsit brought by Anton Willman against John Spahn, for the recovery of a balance of $94.00 for damages, arising from an alleged breach of a contract which he claims was made between John Spahn and himself. Willman claims that on the 13th day of September, 1896, John Spahn made a contract with him to go upon his farm in Brandywine Hundred, as he alleges, on the 14th day of September, the next day, and continue until the 25th day of the following March, for the sum of ten dollars per month wages and his board and lodging.

The plaintiff stands upon two counts in his narr; first, upon the special count which I have just stated to you; second, upon one of the common counts for work and labor. Dealing with the special count first: If you should be satisfied from a preponderance of the evidence in this case, that such a contract was made between John Spahn and Anton Willman, that Spahn agreed to take and keep him in his employ from the 14th day of September until the 25th day of March, at the rate of ten dollars per month in cash and his board and lodging in addition, and that Willman was prevented from the execution of that contract by the wrongful act of John Spahn, the defendant, then, gentlemen, we say to you that under the law the plaintiff would be entitled to recover according to the terms of that contract, viz: Ten dollars per month for his wages and such sum for board and lodging as would be reasonable under the circumstances, less any sum of

money that he may have received on account of the contract and such sum as he may have earned in the time which he would have given to this work if he had continued in the defendant's employ.

But in order to so find, you must be satisfied that such a contract was made and that the plaintiff was discharged without cause, and that he did not leave himself. Every element that is necessary to constitute that contract, and to constitute a discharge against his will, must be proved to your satisfaction by a preponderance of evidence.

It is claimed, however, that if there was a contract specifically and clearly made, yet that being made on the Sabbath-day, it was not a valid contract, that it cannot be enforced, and that no damages whatever could be recovered for its breach.

Upon the question of the contract itself, we have to say to you, that any worldly employment in the ordinary transaction of the business of life on the Sabbath-day is forbidden by the laws of Delaware. All civilized nations have recognized the propriety and necessity of one day of rest in seven, and the laws of this State have sanctioned that necessity by prohibiting the transaction of ordinary business on that day, and a contract made on the Sabbath-day is void if it be executory, as this contract was; that is, an agreement made to-day to be executed in the future.

The law is so well expressed on this subject in the *American and English Encyclopedia of Law, Vol. 24, 560*, that it is impossible for me to express it better.

"The doctrine now accepted is that in all contracts entered into on Sunday, as both parties are in *pari delicto*, neither can assert rights under the contract; the policy of the law is that of absolute non-action; it leaves the parties exactly where they happen to be. The result is that the contract, being executory, is for all practical purposes void; the maxims in *pari delicto potior est conditio defendentis* and *ex turpe causa non oritur actio* preclude recovery by either party in an action based upon the contract."

Therefore, if you believe this contract was entered into and made on Sunday, it is void, and, furthermore, that it cannot be ratified. On page 570 of this same work, the law upon the subject of ratification is expressed thus:

'' By the weight of authority it seems that a contract entered into upon Sunday is incapable of ratification in the strict sense of the term; the authorities supporting this view maintaining that the contract is absolutely void, being declared illegal by statute, and that the parties, by a mere subsequent agreement, cannot legalize what the law has declared illegal. Authorities are not wanting, however, to the effect that, as the contract is only illegal because entered into on Sunday, a ratification upon a secular day purges it of this illegality, and that it then becomes as binding and valid as though entered into, in the first instance, upon a day other than Sunday. There are other cases cited in the support of this latter doctrine, i. e., that a Sunday contract is capabel of ratification, which upon examination will be found not to support it, the contracts in question being in fact new contracts with regard to the same subject matter entered into upon a secular day; the same consideration being available.''

Therefore the specific Sunday contract, if you find it to be such, could not be ratified. If there was any valid contract made afterwards, it would be another matter; and it is for you to say whether there was any contract of any kind.

If the contract was made on Sunday under our statute, it is void; and so far as any damages for non-performance of it are concerned, there could be no action sustained, if you should find that it was made on Sunday.

But we have further to say to you, that if you should find that the contract was made on Sunday and was therefore void, yet, if John Spahn actually received the benefit of the labor of Anton Willman for a period of time after the 13th day of September, 1896, the law places the duty upon him to pay for it, and under the count for work and labor, the plaintiff would be entitled to recover whatever money he earned which was not paid while he remained in the employ of the defendant under those circumstances. And if you should find from the evidence that there was any balance due him for work so done, he would be entitled to recover a verdict at your hands for that amount.

We do not think that the doctrine of entirety as applied to contracts is applicable to this case.

In reaching your verdict, you are to be governed by the preponderance of evidence upon all the points to which I have called your attention, and wherever the preponderance of that evidence is, in that line should your verdict be given.

Recapitulating briefly; if there was a specific and valid contract made on any other day than Sunday, that is on a secular day, for a specific period of time, and the plaintiff was prevented from performing that duty during that time by the acts of the defendant, without plaintiff's fault, he is entitled to recover damages for whatever amount he was entitled to under the contract, less such sum as he may have received from the defendant and others during the time covered. If you should believe that the contract was made on Sunday, it is void and no action can be had on the contract; and if you should believe that the contract was made on Sunday and still the plaintiff did work, he is entitled, under the common counts, to recover for that work that he actually performed, whatever balance is due him.

Verdict for the plaintiff for $80.00.

The counsel for the defendant thereupon filed the following reasons for a new trial:

1. That the verdict was against the law.

2. That the verdict was against the evidence.

3. That the verdict was against the weight of the evidence.

4. That the evidence for the plaintiff below respondent was sufficient to entitle defendant below appellant to a verdict on the special count alleged in the narr, and to bar the claim of plaintiff below respondent on said count. A rule was laid upon the plaintiff returnable Saturday, December 18th, 1897, to show cause why the verdict should not be set aside and the defendant let into a new trial.

After hearing argument, the Court ordered the rule discharged.