231 So.2d 901

**Margie Mann HOOD, as Administratrix of the Estate of Robin Cecil Hood, Deceased**

v.

**James F. KELLY.**

**5 Div. 896.**

Supreme Court of Alabama.

Feb. 19, 1970.

Russell, Raymon and Russell, Tuskegee, for appellant.

**338**

Reneau & Reneau, Wetumpka, for appellee.

MADDOX, Justice.

This is an action by Margie Hood, as Administratrix, for the wrongful death of her 4-year-old child, who was struck and killed as he was crossing a public highway in Macon County. The case was tried before a jury which found no negligence on the part of the defendant and returned a verdict in his favor. Appellant filed a timely motion for new trial and her sole assignment of error here is the trial court's denial of this motion.

Appellant claims that the trial court should have granted her a new trial because two of the trial jurors were disqualified—one because of bias and prejudice and the other because of his relationship to the defendant.

The trial court ordered a hearing on the motion for a new trial and evidence was taken touching on these questions. It was stipulated that the trial court properly qualified the jury venire on the trial as to bias and prejudice and marital relationships and kinship according to law. It was also stipulated that jurors John Wesley Boles and Kermit Ledbetter, who appellant claims were disqualified because of bias and kinship respectively, were members of the trial jury.

With respect to juror Boles, two witnesses testified at the hearing on the motion for a new trial that during a noon recess of the case, Boles had stated in their presence that "he didn't think the plaintiff had any case." Boles did not deny having made such a statement. He did say that he was one of the last jurors holding out for the plaintiff.

The impropriety of Boles discussing the pending case in this manner is obvious, but to require the granting of a new trial, his misconduct should indicate bias or corruption in the performance of his duty, or the circumstances should indicate that his misconduct influenced the verdict rendered. This was certainly an untimely expression of Boles' views on the case, but the fact situation here is strikingly similar to that in Blakeney v. Alabama Power Co., 222 Ala. 394, 133 So. 16 (1931), wherein we said that the presumption is always indulged against fraud.

With regard to juror Ledbetter, it was shown that he was related to the defendant within the prohibited degree by affinity. Ironically, he was also related to plaintiff's husband, but not within the prohibited degree.

Appellant contends that since Ledbetter served on the trial jury we must reverse in

accordance with the opinion of this court in Rosenbush Feed Co. v. Garrison, 251 Ala. 245, 37 So.2d 106 (1948). In *Rosenbush,* supra, one Mills, a prospective juror, was related to plaintiff's counsel within the prohibited degree. He failed to respond to the inquiry made to him as to such relationship. We said:

"If Mills had served on the jury which tried the case, the trial court's action in refusing to grant a new trial to defendants would require a reversal, for we are in accord with the opinions of the Court of Appeals hereafter cited, which hold that a new trial must be granted where a prospective juror did not answer correctly the material questions propounded by the court in qualifying the jury and where such juror was accepted on the jury which tried the case. A new trial must be granted under such circumstances irrespective of whether the concealment was deliberate or unintentional. Leach v. State, 31 Ala.App. 390, 18 So.2d 285; Griffith v. State, 31 Ala.App. 432, 18 So.2d 284. * * *"

Appelleee says that we should not apply the *Rosenbush* rule here because plaintiff's father-in-law, Cecil Hood, assisted her counsel in striking the jury, that Hood knew of the relationship of Ledbetter to the defendant at the time the jury was being struck, and having such knowledge of facts which would have disqualified Ledbetter, plaintiff should not have remained silent and speculated on the verdict and cannot now assert prejudicial error to reverse because the verdict was adverse.

Unquestionably, there was evidence introduced on the motion for a new trial from which the trial court could find that plaintiff had allowed her father-in-law to direct the striking of the jury and that her father-in-law knew of the disqualification at the time and had stated to the plaintiff after the jury retired, "You know he (meaning Ledbetter) is kin. I *knew it* but I must not have realized it." It is clear, in any event, that plaintiff knew of the disqualification before the jury returned its verdict.

Juror Ledbetter testified that at the time of the trial he did not know the defendant and consequently did not know that he was related to him. The defendant also testified that he did not know juror Ledbetter at the time of trial and therefore did not know of the relationship between them.

We can find no Alabama case directly in point on the question, but we have several cases which state that a good ground for challenge under Title 30, § 55, Code of Alabama 1940 (Recompiled 1958), may be waived. Lyman v. State, 45 Ala. 72 (1871); Batson v. State, ex rel. Davis, 216 Ala. 275, 113 So. 300 (1927). In Oliver v. Herron, 106 Ala. 639, 17 So. 387 (1894), we said with regard to the principle that a right to challenge may be waived:

" * * * The right of jury trial is a personal right, of which no person can be deprived against his will, but there is neither constitutional nor statutory provision which prohibits him from waiving his constitutional privilege in civil actions. Movants had personal notice of the condition of the juror during the trial. If they intended to raise an objection to his competency or qualifications, it was their bounden duty to have done so at the time. Having concluded the case, in the face of such notice, and taken the chances of a verdict in their favor, they will be conclusively held to have waived the objection to the juror."

From the evidence adduced on the motion for a new trial it appears that the only person who knew of Ledbetter's disqualification at the time of trial was the father-in-law of the plaintiff who was assisting in the striking of the jury for the trial.[1] The defendant and the affected

---

1. The record indicates that plaintiff may have wanted Ledbetter to serve. The following is testimony of plaintiff:

"Q. But Mr. Cecil Hood was in Court the whole time and he—
A. No. Not all the time.

juror both stated that they did not know each other at the time of the trial, and there was no evidence to contradict their statements. In the absence of a showing of bias and prejudice because of Ledbetter's service on the jury, we cannot say that the trial court committed reversible error in refusing to grant a new trial in this case and under the fact situation here presented. The judgment of the trial court is accordingly due to be affirmed.

Affirmed.

MERRILL, HARWOOD, BLOOD-WORTH and McCALL, JJ., concur.

Q. I say, he was in Court during the whole time the jury was being impanled (sic) and struck, wasn't he?
A. Yes.
\* \* \* \* \*
Q. But Mr. Hood was there—
A. Uh-huh.
Q. —and he consulted with Mr. Russell—
A. He told Mr. Russell.
Q. He told Mr. Russell about which jurors to strike and which ones to—
A. Yes. And he told me that Mr. Ledbetter was kin to him.
Q. So that you were very careful to leave Mr. Ledbetter on that jury, weren't you?

A. Well, you didn't strike him off. He wasn't kin to me.
Q. No, but you were hoping that Mr. Ledbetter wouldn't be struck, weren't you? You all decided that you wanted to leave him—
A. I don't know. I didn't know but about two on the jury.
Q. I know. But you all were hoping that Mr. Ledbetter would not be struck, weren't you?
MR. RUSSELL: We object to that. It is obvious they wanted him.
MR. RENEAU: That's alright as long as you admit that you were.
A. Why shouldn't you pick someone you know?"